Michael SARTORI, Plaintiff,

v.

**WABASH RAILROAD COMPANY, an Ohio corporation, and Norfolk and Western Railway Company, a Virginia Corporation, Defendants.**

No. 91 C 3241.

United States District Court,
N.D. Illinois, E.D.

March 16, 1992.

Patrick Joseph Cullinan, Burke, Smith & Williams, Vincent Dominick Pinelli, Burke, Burns, Ellison & Pinelli, Ltd., Chicago, Ill., for plaintiff.

Thomas John Healey, Jr., Oppenheimer, Wolff & Donnelly, Evan Burton Karnes, II,

Law Offices of Evan B. Karnes II & Associates, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Michael Sartori was a Chicago police officer who suffered severe injuries after tripping over a piece of railroad equipment while pursuing burglary suspects on a railroad right-of-way. He filed a one-count complaint alleging negligence against Defendants Wabash Railroad Co. ("Wabash") and Norfolk and Western Railway ("Norfolk") in the Circuit Court of Cook County, Illinois. Defendants removed to federal court, invoking this court's diversity jurisdiction.

Although Sartori's complaint demands damages "in excess of $15,000," this court is satisfied that the required jurisdictional amount in controversy is met based on the severity of the injuries described in the complaint and based on the representations made by the parties on the record at a February 18, 1992 status hearing and in their Rule 12(m) and 12(n) filings.

Defendants have moved for summary judgment. Their motion is denied.

### Background [1]

On the afternoon of March 15, 1990, Sartori was on duty as a Chicago police officer. He received a call of a burglary in progress near the intersection of 75th Street and Racine and rushed to the scene in his patrol car.

North of 75th Street, running in an east-west direction, is a railroad right-of-way. The right-of-way was located on top of an embankment. Wabash owned the right-of-way and leased it to Norfolk which used it in operating its railroad business.

Sartori parked his car on the north side of the right-of-way and ascended the embankment in search of the burglary suspects. As he arrived at the top of the

embankment, Sartori spotted the suspects and gave chase. He ran diagonally, in a southeasterly direction, across five sets of active railroad tracks and then chased the offenders eastward.

Pursuing the suspects eastward, Sartori ran between the rails of the southern-most track. This southern-most track was an inactive "spur track" which had been used to switch railroad cars into and out of adjoining manufacturing plants. The spur track and the southern portion of the right-of-way, which lacked active railroads, were overgrown with vegetation.

Sartori states that he tripped over a derailer as he was running. A derailer is a safety device attached to a rail whose purpose is to prevent rail equipment and cars from traveling onto or beyond certain areas of track. The derailer over which Sartori claims he tripped had dimensions of 8⅜ inches in height, 18 inches from front to back, and a tapered width starting at 2 inches on either end and increasing to 8 inches at the center. Usually, derailers are painted yellow to increase their visibility. Sartori claims that the derailer in question was covered by vegetation and could not be seen.

### Discussion

■ Defendants argue that summary judgment is appropriate in this case because they owed no duty to Sartori. The Illinois Supreme Court has ruled, however, that owners and occupiers of land owe a policeman who is on the premises in the performance of his official duties the same duty which the possessor of land owes to an invitee. *See Fancil v. Q.S.E. Foods, Inc.,* 60 Ill.2d 552, 556, 328 N.E.2d 538 (1975).

The *Fancil* Court wrote that the possessor's liability to a policeman or fireman falls under the rule stated in section 343 of the Second Restatement of Torts which provides:

1. The court's review of the facts is based on the parties' Statements of Material Uncontested Facts and Response filed pursuant to Rules 12(m) and 12(n) of the General Rules of the Northern District of Illinois. All reasonable inferences will be made in favor of Sartori, the non-movant.

**720**

A possessor of land is subject to liability for physical harm caused to his invitees by a condition of the land if, but only if, he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 557, 328 N.E.2d 538.

In 1984, eight years after the *Fancil* decision, the Illinois legislature passed the Premises Liability Act, Ill.Rev.Stat. ch. 80, ¶¶ 301 *et seq.* Paragraph 302 of the Act states:

The distinction under the common law between invitees and licensees as to the duty owed by an occupier of any premises to such entrants is abolished. The duty owed to such entrants is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them.

Neither party cited the Premises Liability Act nor argued that its standard of care, rather than the standard articulated in *Fancil,* applies. In *Hedberg v. Mendino,* 218 Ill.App.3d 1087, 161 Ill.Dec. 850, 579 N.E.2d 398 (2d Dist.1991), a factually similar case in which a policeman sued a property-owner, the Illinois appellate court disregarded the Premises Liability Act and analyzed a motion to dismiss with the understanding that *Fancil* provided the standard of care.

The present motion would be denied under either the standard codified in the Premises Liability Act or the standard announced in *Fancil.* If the Premises Liability Act's "straight reasonableness" standard applied, the court would find that summary judgment should be denied on the grounds that the fact-finder should decide whether the right-of-way was reasonably maintained. The parties should be apprised, however, that this court will have to choose between the two articulations of the

Defendants' duty at trial prior to instructing the jury. For purposes of this motion, the court will assume, as did the parties and the *Hedberg* court, that the *Fancil* articulation applies.

Defendants argue that the danger presented by the derailer was not "an unreasonable risk of harm" and that therefore, under *Fancil,* they owed Sartori no duty. That argument mixes up two separate questions, however. The first question, a question of law, is whether a duty is owed. The answer to that question is clear. Defendants owe Sartori the same duty that they would owe an invitee. *See Fancil.* The second issue is whether that duty was breached. Under *Fancil,* the duty is breached when *inter alia* an unreasonable risk that the landowner knew or should have known about causes an injury to an invitee.

■ Based on the factual record, this court can not conclude as a matter of law that the risk was not unreasonable. Sartori has presented admissible evidence that the spur track was not maintained and that the derailer was concealed by vegetation. The trier of fact should determine whether the risk was unreasonable or not.

■ Defendants also argue that they are not liable because Sartori should have discovered the hazard. They point to his general familiarity with railroads and his prior experience on the right-of-way on which the injury occurred. Sartori counters that the hazard of the derailer was not a danger he should have known about because the derailer was hidden in vegetation in an area maintained so as to appear that no equipment would be present. In addition, Sartori presents evidence that the derailer was not well painted. Consequently, the court can not rule as a matter of law that Sartori knew or should have known of the risk. That is another question for the trier of fact.

■ Finally, Defendants argue that tripping over a piece of railroad equipment while pursuing fleeing suspects through a railroad yard is a risk inherent in police work and that therefore they are not liable.

The *Fancil* Court had ruled that possessors of land are not liable for injuries sustained by police officers due to risks inherent in police work. In *Fancil,* a police officer's widow sued a store for failing to illuminate adequately the exterior of the store. The policeman was ambushed and killed by burglars who were lurking in the shadows. The Illinois Supreme Court ruled that the store owners were not liable for the killing which it deemed a risk inherent in police work.

The Court wrote:

The risk to which the decedent was subjected because of the conditions which existed upon the defendant's premises was the same risk which every police officer encounters while conducting security checks in both residential and commercial areas. The danger of being ambushed by criminals lurking in poorly illuminated areas, in shadows or behind objects is a risk inherent in the occupation. Hence, the danger to which the decedent was subjected was not an unreasonable risk for a police officer.

*Id.* 60 Ill.2d at 558, 328 N.E.2d 538.

Defendants' theory that tripping while chasing suspects is a risk inherent in police work expands the "inherent risk" theory too far. Otherwise the "inherent risk" exception would swallow the rule that possessors of land owe police officers the duty owed to invitees. Every injury a police officer suffers while on duty could be characterized as inherent in the job. Thus, *Fancil*'s "inherent risk" exception must be limited to risks and dangers which created the police officer's response. For example, if Sartori had been assigned to inspect the railroad to determine whether the equipment was maintained safely, then tripping over a concealed derailer would be considered an "inherent risk."

The appellate court in *Hedberg v. Mendino,* 218 Ill.App.3d 1087, 161 Ill.Dec. 850, 579 N.E.2d 398 (2nd Dist.1991), reached the same conclusion on the scope of the "inherent risk" exception although it spoke in terms of assumed risk. In *Hedberg,* a police officer responded to a call regarding a prowler on someone's home. The police-

man was injured when he came upon a depressed and defective portion of the sidewalk leading to the property. The *Hedberg* court emphasized that the policeman was on the property to investigate a prowler and not to investigate the sidewalk, observing that "[t]he injury arose from a cause independent of the reason plaintiff was called to the premises." *Id.* at 1091, 161 Ill.Dec. 850, 579 N.E.2d 398. The court rejected the reasoning of *Rosa v. Dunkin' Donuts,* 583 A.2d 1129, 122 N.J. 66 (1991), which held the distinction between the negligence that occasions the officer's presence on the scene and the negligence causing the injury to be artificial, and ruled that the policeman had not assumed the risk of injury posed by the defective sidewalk. *See also Court v. Grzelinski,* 72 Ill.2d 141, 148, 19 Ill.Dec. 617, 379 N.E.2d 281 (landowners have a duty of reasonable care to prevent injury to firemen which might result from a cause independent of the fire, but no duty to prevent injury resulting from the fire itself).

### Conclusion

Defendants' motion for summary judgment is denied.